## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| RANDALL RICHARDSON and JANITORIAL TECH, LLC, Individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>COVERALL NORTH AMERICA, INC.,<br><br>    Defendant. | CIVIL ACTION FILE NO.<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

## INTRODUCTION

1.

This is a class and collective action brought to obtain injunctive, declaratory, and monetary relief for the named plaintiffs and classes of similarly situated individuals and companies.

2.

Plaintiffs Randall Richardson and Janitorial Tech, LLC ("Plaintiffs"), on behalf of themselves and all other similarly situated persons and companies, bring this action against Coverall North America, Inc. ("Coverall") as a result of

Coverall's systematic violations of the Fair Labor Standards Act ("FLSA," 29 U.S.C. §§ 201 *et seq.*), Georgia Industrial Loan Act (O.C.G.A. §§ 7-3-1 *et seq.*), Georgia Payday Lending Act (O.C.G.A. §§ 16-17-1 *et seq.*), and Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO," O.C.G.A. §§ 16-14-1 *et seq.*), as well as for Coverall's fraud and misrepresentations.

3.

Coverall purports to sell cleaning "franchises" to Georgia janitors for substantial sums of money on the promise of guaranteed business and financial freedom. Upon information and belief, Coverall knows that it does not have a sufficient number of customers to satisfy the business its promises to its janitors. Georgia janitors purchase "franchises" from Coverall in reliance on Coverall's misrepresentations. After the janitors pay substantial upfront "franchise" fees for the right to provide cleaning services for Coverall, Coverall does not provide the guaranteed amount of business it promised but instead subjects the janitors to a scheme of misrepresentations, revolving customer accounts, and numerous "Additional Business" fees in an attempt to exact as much money as it can from the unsuspecting janitors.

4.

As part of its scheme, Coverall misclassifies its janitors as "franchisees" and

independent contractors, rather than employees, in an attempt to avoid liability under the FLSA, notwithstanding that Coverall exerts complete behavioral and economic control over its janitors.

5.

Coverall further subjects its Georgia janitors to repeated violations of the Georgia Industrial Loan Act and Payday Lending Act by making loans to the janitors of $3,000.00 or less at illegal rates. Coverall requires its janitors to pay certain fees that the janitors cannot afford. So that the janitors can pay the required fees, however, Coverall loans the janitors money in amounts of $3,000.00 or less at illegal rates and then deducts the principal and illegal interest directly from the janitors' pay before paying the janitors. In some instances, after Coverall deducts its fees (including loan payments), the janitors are paid nothing for the cleaning work they performed.

6.

In this lawsuit, Plaintiffs seek relief on behalf of themselves and other Georgia janitors and their companies who have been subjected to Coverall's scheme and violations of federal and Georgia state law.

## PARTIES

### 7.

Plaintiff Randall Richardson is an individual residing in Clayton County, Georgia.

### 8.

Plaintiff Janitorial Tech, LLC is a Georgia limited liability company with its principle place of business located in Clayton County, Georgia.

### 9.

Defendant Coverall North America, Inc. ("Coverall") is a Delaware corporation doing business under the laws of the State of Georgia with its principal place of business located in Deerfield Beach, Florida. Coverall's Georgia office is located in Gwinnett County, Georgia.

### 10.

Coverall may be served with the Summons and Complaint through its registered agent for service, Corporate Creations Network, Inc., 2985 Gordy Parkway, 1st Floor, Marietta, Georgia 30066.

## JURISDICTION AND VENUE

### 11.

This Court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331, 1332(d), and/or 1367.

12.

Venue is proper in this Court because a substantial part of the acts forming the basis of this lawsuit occurred in Gwinnett County, Georgia, which is within the Northern District of Georgia, Atlanta Division.

## FACTUAL BACKGROUND AS TO CLASS

### Coverall's Commercial Cleaning Business

13.

Coverall operates a commercial cleaning business across the country, including in Georgia.

14.

Coverall contracts with customers in the State of Georgia to perform commercial cleaning services. For example, Coverall's customers include dental offices, medical offices, churches, and other commercial businesses.

15.

Coverall employs a team of individuals to call on and establish customer accounts.

16.

Coverall contracts directly with its customers and maintains exclusive control over all administrative functions relative to its customers' accounts, including all financial aspects of the cleaning contracts.

17.

Coverall maintains exclusive control over accounting, invoicing, billing, and collection of payment from its customers.

18.

To perform the cleaning services for its customers, Coverall employs hundreds of cleaning workers (janitors) in the State of Georgia.

19.

Because Coverall controls and owns the cleaning contracts with its customers, Coverall maintains complete control over its customers and can dictate which customer accounts are given to which janitors. Coverall can reassign its customer accounts from one janitor to another as Coverall chooses. In Coverall's sole discretion, it can and often does shift accounts from one janitor to another.

20.

Coverall dictates how its janitors carry out their work from beginning to end, including requiring its janitors to attend mandatory training, purchase all cleaning equipment from Coverall, and perform cleaning services in a manner dictated by Coverall.

21.

Coverall is solely responsible for whether janitors are paid for the work they perform. Coverall's customers pay Coverall directly for Coverall's cleaning

services, and then Coverall pays the janitors for their work (after deducting any fees Coverall claims are owed by the janitors to Coverall).

## **Coverall's Scheme**

### 22.

Upon information and belief, Coverall targets low-income, undereducated individuals to serve as janitors.

### 23.

Before janitors can perform cleaning services for Coverall, Coverall requires the janitors to set up a corporation or limited liability company, sign a "Janitorial Franchise Agreement," and pay an upfront "franchise" fee.

### 24.

Upon information and belief, Coverall requires its janitors to set up a corporation or limited liability company in an attempt to shield itself from liability under the FLSA and other Georgia laws.

### 25.

The Janitorial Franchise Agreement that Coverall requires its janitors to sign is a standard form, adhesion contract purporting to establish certain terms and conditions for Coverall's janitors.

26.

Upon information and belief, the Janitorial Franchise Agreement between Coverall and all of its Georgia janitors is identical or substantially similar in all material respects.

27.

Ultimately, the Janitorial Franchise Agreement serves as nothing more than an attempt to strip Coverall's janitors of important rights and shield Coverall from liability.

28.

Coverall's janitors are not allowed to negotiate the terms and conditions in the form Janitorial Franchise Agreement.

29.

Many significant terms and provisions in the Janitorial Franchise Agreement are buried in small, single-spaced font at the end of the document and/or under misleading section headings.

30.

In conjunction with the Janitorial Franchise Agreement, Coverall further requires its janitors to pay a non-refundable upfront "franchise" fee, which fee ranges from $13,500.00 to $38,400.00.

31.

Coverall sells numerous "franchises" in the State of Georgia.

32.

To induce its workers to sign the Janitorial Franchise Agreement and pay the "franchise" fee, Coverall applies high pressure sales tactics and recklessly and/or intentionally misrepresents that it will provide the janitors a certain amount of guaranteed "monthly gross dollar volume."

33.

Upon information and belief, Coverall does not have enough customer accounts to satisfy the monthly business volume promised to the janitors who sign agreements and pay substantial fees.

34.

Upon information and belief, Coverall knows at the time it advertises, solicits, and induces its janitors to sign the agreement and pay the fee that it does not have sufficient customer accounts to satisfy the guaranteed business Coverall promises to its janitors.

35.

Upon information and belief, Coverall knowingly and willfully advertises, solicits, and induces its janitors to sign the agreements and pay the fee knowing that Coverall cannot perform as promised.

36.

Coverall systematically fails to provide the guaranteed business it promises to its janitors.

37.

Through a variety of schemes involving fraud and misrepresentation, Coverall attempts to make it appear as if it has satisfied its obligations to its janitors.

38.

For example, Coverall misrepresents the number of hours per week, rates of pay, and geographic location that will be required to service certain customer accounts offered to the janitors. Coverall tells its janitors that it has fulfilled its obligations by offering accounts knowing that the accounts offered will not be accepted due to geographic inconvenience, impossibility of performing the number of hours of work required to service the accounts, or rates of pay well below what was promised or what would be required to perform the work.

39.

In addition, Coverall attempts to appear as if it is satisfying its obligations by shifting customer accounts from janitor to janitor.

40.

Coverall takes the customer accounts away from its janitors for no reason, but tells the janitors that they did something wrong. Coverall does not give the janitors an opportunity to correct or challenge alleged deficiencies and does not provide any evidence that the purported complaint is actually coming from the customer, rather than fabricated by Coverall.

41.

To justify shifting its customers from worker to worker, Coverall attempts to make it appear as if it is the janitor's fault the customer was lost, rather than Coverall simply not having the business it promised. Coverall frequently tells its janitors that the customer was dissatisfied with their work when in fact the customer was satisfied.

42.

After taking the customer away from one janitor, Coverall can then offer that customer to another janitor in an attempt to satisfy the promises Coverall made to that second janitor. Accordingly, Coverall churns its accounts in order to make it appear that it has satisfied its agreements with different janitors.

43.

In some cases, Coverall charges its janitors an "Additional Business" fee for the customer it takes from one janitor and gives to another janitor.

44.

The "Additional Business" fee is a fee Coverall charges a janitor when it assigns the janitor a new customer account to service.

45.

When the janitor cannot afford to pay upfront the "Additional Business" fee for a new customer, Coverall loans the money to the janitor at illegal rates. Coverall subsequently takes the customer from that janitor for no reason, but continues to charge that janitor principal and illegal interest on the "Additional Business" fee loan. Coverall then assigns the customer to another janitor and charges that janitor an "Additional Business" fee, which may also be financed through an illegal loan.

46.

Upon information and belief, Coverall collects principal and illegal interest on multiple "Additional Business" fee loans to multiple janitors for the same customer account.

47.

Upon information and belief, Coverall repeats the cycle of reassigning customers to different janitors over and over again so as to (1) churn the accounts and appear as if it is satisfying its business guarantees, and (2) exact as many

"Additional Business" fees (which may include illegal interest) as it can from its janitors.

48.

Coverall deducts all of the fees, including the "Additional Business" fees, that it claims its janitors owe directly from the janitors' pay before sending the janitors any pay for the cleaning services they performed.

49.

In some instances, the fees charged by Coverall and deducted from the janitors' pay exceed the amount of money owed to the janitors for their cleaning work, and therefore the janitors are paid ***nothing*** for the work they perform in a given pay period.

**Coverall's Lending Scheme**

50.

Coverall's janitors often do not have the money necessary to pay the "franchise" fee, "Additional Business" fee, or other various fees required by Coverall.

51.

Accordingly, Coverall loans its janitors, or the companies the janitors set up, money so that they can pay the fees required by Coverall.

52.

In connection with any loans from Coverall to a janitor's company, Coverall requires the janitor to sign a personal guaranty for the amounts owed.

53.

Coverall makes numerous loans to its janitors and/or their companies for amounts of $3,000.00 or less.

54.

The principal and interest on the various loans Coverall makes to its janitors and/or their companies are deducted from the janitors' pay before Coverall makes any payment to the janitors for their cleaning work.

**FACTUAL BACKGROUND AS TO NAMED PLAINTIFFS**

55.

On May 17, 2016, Plaintiffs paid Coverall a "franchise" fee and signed the Janitorial Franchise Agreement.

56.

As required by Coverall, Coverall would only formally engage with Mr. Richardson's company, Janitorial Tech, for purposes of documenting the relationship between Coverall and Mr. Richardson.

## 57.

Mr. Richardson performs cleaning services for Coverall's customers; Coverall pays Mr. Richardson's company; and Mr. Richardson then retains the money for his services.

## 58.

Plaintiffs paid Coverall a $15,570.00 "franchise" fee based on Coverall's promise of $3,000.00 in guaranteed monthly business.

## 59.

Plaintiffs paid $3,500.00 as a down payment, and Coverall loaned Plaintiffs the remaining $12,070.00 at rate of 12% per annum to be repaid over 36 months.

## 60.

Coverall required that Mr. Richardson personally guaranty the loan, which he did by signing a guaranty agreement.

## 61.

Coverall required that Mr. Richardson personally guaranty all loans Coverall made to Janitorial Tech.

## 62.

Coverall induced Plaintiffs to sign the Janitorial Franchise Agreement based on the promise of guaranteed business. At the time of advertising, soliciting, and

requiring Plaintiffs to sign the Janitorial Franchise Agreement, Coverall knew it could not satisfy its obligations to Plaintiffs.

63.

But for Coverall's promise of guaranteed monthly business, Plaintiffs would not have paid the "franchise" fee or signed the Janitorial Franchise Agreement.

64.

Coverall failed to provide the guaranteed business it promised Plaintiffs.

65.

Although Coverall provided some customers to Plaintiffs, Coverall also took some of those customers away from Plaintiffs for no reason. Upon information and belief, Coverall reassigned some of Plaintiffs' assigned customers to other janitors in an attempt to satisfy the guarantees Coverall made those other janitors and/or recoup "Additional Business" fees from those other janitors.

66.

Coverall took several customers from Plaintiffs, telling Mr. Richardson that the customers were unhappy with Mr. Richardson's cleaning services. The customers never told Mr. Richardson they were disappointed with his work. All of Mr. Richardson's communications with the customers indicated that they were, in fact, happy with Mr. Richardson's cleaning services.

67.

Despite Mr. Richardson's multiple requests, Coverall refused to provide any proof that the reassigned customers complained of Mr. Richardson's services.

68.

When Coverall did not satisfy the promised business owed to Plaintiffs and took customers from Plaintiffs, Mr. Richardson complained to Coverall. Coverall then informed Mr. Richardson that Plaintiffs could buy "Additional Business" by paying an "Additional Business" fee.

69.

Because Plaintiffs would have only a few customers left to service, and thus little work and little pay, Plaintiffs had no choice but to agree to take a loan from Coverall and pay the "Additional Business" fees.

70.

In one instance, Coverall offered Plaintiffs "Additional Business" that cost $860.40. Plaintiffs paid Coverall a $100.00 down payment, and Coverall loaned Plaintiffs $760.40, payable in 7 monthly installments of principal and interest at the rate of 12% interest per annum. The loan note provided that, upon default, all amounts of principal and interest owed shall become immediately due and payable. The principal and interest on this loan have been deducted directly from Plaintiffs' pay.

71.

In another instance, Coverall offered Plaintiffs "Additional Business" that cost $1,998.00. Plaintiffs paid Coverall a $200.00 down payment, and Coverall loaned Plaintiffs $1,798.00, payable in 12 monthly installments of principal and interest at the rate of 12% interest per annum. The loan note provided that, upon default, all amounts of principal and interest owed shall become immediately due and payable. The principal and interest on this loan have been deducted directly from Plaintiffs' pay.

72.

In a third instance, Coverall offered Plaintiffs "Additional Business" that cost $1,915.20. Coverall loaned Plaintiffs the full $1,915.20, payable in 12 monthly installments of principal and interest at the rate of 12% interest per annum. The loan note provided that, upon default, all amounts of principal and interest owed shall become immediately due and payable. The principal and interest on this loan have been deducted directly from Plaintiffs' pay.

73.

In one instance in which Coverall loaned Plaintiffs money to cover the "Additional Business" fee, Coverall took the account from Plaintiffs without justification soon after Plaintiffs began paying principal and interest on the

"Additional Business" fee. Nonetheless, Coverall continues to deduct directly from Plaintiffs' pay the principal and interest purportedly owed for that "Additional Business" fee.

74.

Coverall deducted all fees it claimed Plaintiffs owed directly from Plaintiffs' pay each pay period, including the principal and interest on the various loans it made to Plaintiffs.

75.

Coverall promised Plaintiffs "monthly gross dollar volume" totaling at least $3,000.00 to induce Plaintiffs to pay a "franchise fee" and sign the Janitorial Franchise Agreement.

76.

Coverall has not satisfied its obligation to Plaintiffs to provide monthly gross dollar volume totaling at least $3,000.00.

77.

Coverall also has not paid Mr. Richardson minimum wage and overtime as required by the FLSA.

78.

During his time working for Coverall, Mr. Richardson provided cleaning services to, on average, two or three customer accounts each day from Monday through Saturday.

79.

It took Mr. Richardson between three and four hours to provide cleaning services to each customer account he worked for Coverall.

80.

On average, Mr. Richardson performed 52.5 hours per week of cleaning services for Coverall's customers.

81.

Coverall did not pay Mr. Richardson minimum wage and overtime in accordance with the number of hours he worked for Coverall.

82.

In some instances, Coverall paid Mr. Richardson nothing, or almost nothing, for the work he performed.

83.

For example, despite Mr. Richardson performing 241 hours of work in May 2017 for Coverall, Coverall paid Plaintiffs ***nothing***.

84.

In April 2017, Mr. Richardson performed 225 hours of work for Coverall. Yet, Coverall only paid Plaintiffs $456.78 for Mr. Richardson's work.

## THE ARBITRATION AGREEMENT IS
## INAPPLICABLE, VOID, AND/OR UNENFORCEABLE

85.

The Janitorial Franchise Agreement contains an arbitration provision buried in tiny font at the end of the document.

86.

The Janitorial Franchise Agreement also contains a class waiver buried in tiny font at the end of the document.

87.

The arbitration provision purports to require all claims be submitted to arbitration with several exceptions: (1) claims for injunctive relief and related damages, (2) claims for specific performance, and (3) "if any court or arbitrator determines that all or any part of [the class waiver] is unenforceable with respect to a dispute that otherwise would be subject to arbitration under this Paragraph, then Coverall and Franchisee agree that this arbitration clause shall not apply to that dispute and that such dispute shall be resolved in a judicial proceeding."

88.

Plaintiffs' claims for injunctive relief and related damages are not subject to arbitration pursuant to the plain terms of the arbitration provision, even assuming it is enforceable.

89.

The arbitration provision is also inapplicable in this case pursuant to its plain terms because the class waiver in the Janitorial Franchise Agreement is unenforceable.

90.

Georgia law provides Plaintiffs a substantive right to bring their claims under the Georgia Industrial Loan Act and Payday Lending Act as a class action.

91.

The class waiver is an unfair labor practice in violation of the National Labor Relations Act, 29 U.S.C. §§ 157-158 because it limits Plaintiffs' and other similarly situated janitors' right to engage in concerted activities, and therefore the class waiver is unenforceable.

92.

The class waiver is substantively unconscionable under Georgia law because it is not commercially reasonable in this case; is placed in the contract by Coverall in bad faith solely to discourage Coverall's janitors (including Plaintiffs) from

filing claims against Coverall; imposes tremendous costs and risks upon Coverall's janitors (including Plaintiffs) if they file claims against Coverall; has the practical effect of allowing Coverall to engage in unchecked, unlawful behavior; and is an unlawful waiver of the janitors' (including Plaintiffs') statutory rights and remedies. Moreover, the costs to Plaintiffs of vindicating their claims individually in this case are far outweighed by the costs and risks of litigation. A class action, however, enables Plaintiffs to effectively vindicate their rights and the rights of other similarly situated persons.

93.

The class waiver is procedurally unconscionable under Georgia law given the lack of conspicuousness and comprehensibility of the provision to Coverall's janitors (including Plaintiffs), the disparity in bargaining power between Coverall and its janitors (including Plaintiffs), the relative inexperience of the janitors (including Plaintiffs) versus Coverall's significant experience in litigating claims such as these, the oppressiveness of the terms given the claims at issue (and that Coverall knew would be at issue), the janitors' (including Plaintiffs') ability to understand the terms, and the janitors' (including Plaintiffs') complete lack of choice in negotiating the contract.

94.

The arbitration provision is also itself substantively unconscionable under Georgia law because it is not commercially reasonable in this case; is placed in the contract by Coverall in bad faith solely to discourage Coverall's janitors (including Plaintiffs) from filing claims against Coverall and to shield Coverall from liability; imposes tremendous costs and risks upon Coverall's janitors (including Plaintiffs) if they file claims against Coverall; and unlawfully limits the janitors' (including Plaintiffs') statutory rights and remedies.

95.

The arbitration provision is procedurally unconscionable under Georgia law given the lack of conspicuousness and comprehensibility of the provision, the disparity in bargaining power between Coverall and its janitors (including Plaintiffs), the relative inexperience of the janitors (including Plaintiffs) versus Coverall's significant experience in litigating claims such as these, the oppressiveness of the terms given the claims at issue (and that Coverall knew would be at issue), the janitors' (including Plaintiffs') ability to understand the terms, and the janitors' (including Plaintiffs') complete lack of choice in negotiating the contract.

96.

The arbitration provision is unenforceable because it can reasonably be interpreted as prohibiting Coverall's janitors (including Plaintiffs) from filing charges before the National Labor Relations Board.

97.

The arbitration provision is null and void as a result of Coverall's violation of the Georgia Industrial Loan Act and Payday Lending Act.

98.

The arbitration provision is unenforceable because it was procured through fraud.

## THE DELEGATION PROVISION IS INAPPLICABLE, VOID, AND/OR UNENFORCEABLE

99.

The Janitorial Franchise Agreement purports to require that questions of arbitrability must be decided by an arbitrator (the "delegation provision").

100.

Pursuant to the plain terms of the Janitorial Franchise Agreement, however, the delegation provision does not apply to Plaintiffs' claims for injunctive relief and related damages, even assuming the agreement is enforceable.

101.

The Janitorial Franchise Agreement also provides that a Court may decide the issue of the enforceability of the class waiver in the Janitorial Franchise Agreement, even assuming the arbitration and delegation provisions are enforceable.

102.

Pursuant to the plain terms of the Janitorial Franchise Agreement, the delegation provision provides that the Court can rule on the enforceability of the class waiver, and therefore the enforceability of the arbitration agreement to such class claims, even assuming the agreement is enforceable.

103.

The class waiver is unenforceable with respect to Plaintiffs' claims.

104.

Georgia law provides Plaintiffs a substantive right to bring their claims under the Georgia Industrial Loan Act and Payday Lending Act as a class action.

105.

The class waiver is an unfair labor practice in violation of the National Labor Relations Act, 29 U.S.C. §§ 157-158 because it limits Plaintiffs' and other similarly situated janitors' right to engage in concerted activities, and therefore the class waiver is unenforceable.

106.

The class waiver is substantively unconscionable under Georgia law because it is not commercially reasonable in this case; is placed in the contract by Coverall in bad faith solely to discourage Coverall's janitors (including Plaintiffs) from filing claims against Coverall; imposes tremendous costs and risks upon Coverall's janitors (including Plaintiffs) if they file claims against Coverall; has the practical effect of allowing Coverall to engage in unchecked, unlawful behavior; and is an unlawful waiver of the janitors' (including Plaintiffs') statutory rights and remedies. Moreover, the costs to Plaintiffs of vindicating their claims individually in this case are far outweighed by the costs and risks of litigation. A class action, however, enables Plaintiffs to effectively vindicate their rights and the rights of other similarly situated persons.

107.

The class waiver is procedurally unconscionable under Georgia law given the lack of conspicuousness and comprehensibility of the provision to Coverall's janitors (including Plaintiffs), the disparity in bargaining power between Coverall and its janitors (including Plaintiffs), the relative inexperience of the janitors (including Plaintiffs) versus Coverall's significant experience in litigating claims such as these, the oppressiveness of the terms given the claims at issue (and that

Coverall knew would be at issue), the janitors' (including Plaintiffs') ability to understand the terms, and the janitors' (including Plaintiffs') complete lack of choice in negotiating the contract.

108.

The delegation provision itself is substantively unconscionable under Georgia law because it is not commercially reasonable in this case; is placed in the contract by Coverall in bad faith solely to discourage Coverall's janitors (including Plaintiffs) from filing claims against Coverall; and imposes tremendous costs and risks upon Coverall's janitors (including Plaintiffs) if they file claims against Coverall.

109.

The delegation provision is procedurally unconscionable under Georgia law given the lack of conspicuousness and comprehensibility of the provision to Coverall's janitors (including Plaintiffs), the disparity in bargaining power between Coverall and its janitors (including Plaintiffs), the relative inexperience of the janitors (including Plaintiffs) and Coverall's significant experience in litigating claims such as these, the oppressiveness of the provision given the claims at issue (and that Coverall knew would be at issue), the janitors' (including Plaintiffs')

ability to understand the provision, and the janitors' (including Plaintiffs') complete lack of choice in negotiating the contract.

110.

The delegation provision is unenforceable because it can reasonably be interpreted as prohibiting Coverall's janitors (including Plaintiffs) from filing charges before the National Labor Relations Board.

111.

The delegation provision is also null and void as a result of Coverall's violation of the Georgia Industrial Loan Act and Payday Lending Act.

112.

The delegation provision is unenforceable because it was procured through fraud.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

113.

Plaintiffs bring their FLSA claims pursuant to 29 U.S.C. § 216(b).

114.

The FLSA collective action class is defined as follows:

All workers who have performed cleaning services on behalf of Coverall in Georgia and who have not been paid all wages owed to them, including but not limited to wages and overtime compensation,

for the three (3) years prior to the date of the commencement of this action through the date of judgment in this action (the "FLSA Collective Action Class").

115.

Coverall deliberately, willfully, and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA by misclassifying its employees who perform cleaning services (janitors) as "franchisees" and/or independent contractors and thereby failing and/or refusing to pay them wages and overtime in accordance with 29 U.S.C. §§ 206-207.

116.

Upon information and belief, Coverall also deliberately, willfully, and intentionally violated the FLSA's record-keeping provisions by failing to keep the required records.

117.

Coverall knew or should have known that its janitors are employees under the FLSA. Indeed, Coverall has been sued on multiple occasions for misclassifying its janitors. Because Coverall willfully violated the FLSA by misclassifying its janitor-employees, a three-year statute of limitations applies.

118.

Plaintiffs and the FLSA Collective Action Class are similarly situated in that they all are or were subject to Coverall's common policy, plan, or practice of misclassifying janitors as "franchisees" and/or independent contractors when, in fact, the janitors' status was one of employee under the FLSA. Upon information and belief, there are hundreds of similarly situated Georgia janitors in the FLSA Collective Action Class.

119.

Coverall is liable for failing to pay Plaintiffs and members of the FLSA Collective Action Class minimum wages and overtime in accordance with the FLSA.

120.

Notice pursuant to 29 U.S.C. § 216(b) should be sent to all members of the FLSA Collective Action Class. The current, former, and future employees of Coverall would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join the present lawsuit. The employees in the FLSA Collective Action Class are known to Coverall and are readily identifiable through Coverall's records.

## **RULE 23 CLASS ACTION ALLEGATIONS**

121.

Plaintiffs' bring their state-law claims as a class action pursuant to Federal Rule of Civil Procedure 23.

122.

Plaintiffs bring their state-law claims on behalf of the following subclasses of individuals:

a. All persons and/or companies who purchased a "franchise" from Coverall in Georgia at any time in the five (5) years prior to the commencement of this action through the date of judgment in this action.

b. All persons and/or companies who Coverall loaned $3,000.00 or less in the State of Georgia at any time in the twenty (20) years prior to the commencement of this action through the date of judgment in this action.

123.

**Numerosity:** There are hundreds of class members in each of the Rule 23 subclasses, and the joinder of the class members is impracticable.

124.

**Commonality:** There are questions of law and fact common to the subclasses, including but not necessarily limited to:

a. Whether Coverall made loans to its janitors for amounts of $3,000.00 or less;

b. Whether Coverall is licensed under the Georgia Industrial Loan Act;

c. Whether Coverall violated the Georgia Industrial Loan Act by making loans of $3,000.00 or less without first obtaining a license;

d. Whether Coverall charged more than 10% per annum simple interest on loans of $3,000.00 or less in violation of the Georgia Industrial Loan Act;

e. Whether Coverall charged interest on loans in violation of the Georgia Industrial Loan Act;

f. Whether Coverall violated Georgia's Payday Lending Act by making loans of $3,000.00 or less;

g. Whether Coverall instituted a common scheme to defraud its janitors who performed cleaning services;

h. Whether Coverall obtained its janitors' money through a common scheme of deceitful means and artful practice with the intention of depriving the janitors of their money;

i. Whether Coverall induced its janitors to sign "franchise" agreements and pay substantial fees by making promises it knew it could not fulfill;

j.  Whether Coverall's contracts for loans of $3,000.00 or less are null and void under the Georgia Industrial Loan Act and/or Payday Lending Act;

k.  Whether Coverall's Janitorial Franchise Agreements are null and void under the Georgia Industrial Loan Act and/or Payday Lending Act;

l.  Whether Coverall's Janitorial Franchise Agreements were procured through fraud and are thus unenforceable under Georgia law;

m. Whether Coverall's arbitration provision, delegation provision, and class action waiver in the Janitorial Franchise Agreements are unconscionable, unenforceable, and/or inapplicable; and

n.  Whether Coverall violated Georgia's RICO statute through its repeated violations of the Georgia Payday Lending Act and/or theft of its janitors' money through deception.

125.

**Typicality:**  Plaintiffs claims are typical of the claims of the subclasses.  The members of each subclass were subjected to the same practices and procedures, harmed in the same way, and have claims for relief under the same legal theories.

126.

**Adequacy:**  Plaintiffs will fairly and adequately protect the interests of the members of each subclass.  Plaintiffs have common interests with the members of

each subclass and will vigorously protect the interests of the members of the subclasses through qualified counsel. Neither the named Plaintiffs nor class counsel have any known interests that conflict with the interests of the subclasses.

127.

The questions of law and fact common to all members of the subclasses predominate over any questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The claims in this case present no known manageability problems.

128.

A class action is a superior method for the fair and efficient adjudication of this controversy. Most of the members of the subclasses were and still may be unaware of the wrongs perpetrated against them or of their right to legal redress for those wrongs. The practices complained of are directed by Coverall to uneducated and undereducated individuals who are financially vulnerable and unable to protect their rights.

129.

The court can utilize a simple method of accounting to resolve damages claims on a class wide basis.

130.

Plaintiffs' claims for injunctive and declaratory relief are appropriately brought in a class action because Coverall has acted or refused to act on grounds that apply generally to the subclasses and thus such injunctive and declaratory relief is appropriate respecting the subclasses as a whole.

131.

This case is properly maintainable as a class action.

## **COUNT I: VIOLATION OF THE FLSA, 29 U.S.C §§ 201 *ET SEQ*.**

132.

Plaintiffs incorporate by reference and reallege Paragraphs 1 through 131 as if stated in full herein.

133.

At all relevant times, Coverall has been an enterprise within the meaning of 29 U.S.C. § 203(s) and has engaged in commerce or in the production of goods for commerce and has employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce.

134.

Coverall employs janitors to perform common and related cleaning services in connection with Coverall's commercial cleaning business. Coverall maintains common control over its employees and commercial cleaning business, including its janitors who perform the cleaning work.

135.

Upon information and belief, Coverall has annual gross volume sales made or business done in excess of $500,000.00.

136.

Coverall attempts to structure its business so as to avoid providing its workers with the protections afforded by the FLSA. Rather than properly classifying its janitors and cleaning workers as employees, Coverall artificially labels them "franchisees" and/or independent contractors.

137.

Coverall's so-called "franchisees" are in fact employees who are required to pay Coverall a franchise fee, continuing royalties, and other numerous payments and fees in order to work jobs such as cleaning carpets, floors, and bathrooms, disposing of trash, washing windows, as well as performing other cleaning work for Coverall.

138.

Plaintiffs and other members of the FLSA Collective Action Class routinely work more than 40 hours per week.

139.

Plaintiffs and other members of the FLSA Collective Action Class have not been paid minimum wages and overtime pursuant to the FLSA.

140.

Coverall's janitors are economically dependent on Coverall. As matter of economic reality, Coverall's janitors are employees under the FLSA.

141.

Coverall's janitors provide cleaning services—a function integral to Coverall's business—in connection with cleaning contracts that Coverall negotiates, maintains, and controls.

142.

Coverall's janitors, as a matter of economic reality, are not in business for themselves.

143.

Coverall maintains nearly complete control over its cleaning business. It maintains exclusive control over customer accounts, including accounting, billing, and payment to the janitors for their services. Coverall is solely responsible for

whether janitors get paid, and how much they get paid, after the customer pays Coverall directly for the janitors' cleaning services. Coverall controls which janitors work which customer accounts. Coverall dictates how its janitors carry out their work; requires its janitors to attend mandatory training; and requires its janitors to purchase all cleaning equipment from Coverall.

144.

The janitors' opportunity for profit and loss is tied directly to their work for Coverall. Coverall employs a team of individuals to call on customers, bid on customer contracts, negotiate customer contracts, and ultimately contract directly with customers. Coverall then assigns the janitors to work the customer accounts and pays the janitors for their services (after the customer pays Coverall and after Coverall deducts numerous fees).

145.

The janitors' investments are minimal compared to Coverall. In addition to the fees Coverall charges, the janitors are responsible for purchasing equipment and supplies used for cleaning, which they are required to purchase from Coverall. Coverall, on the other hand, has invested in and developed an infrastructure for its multi-million dollar cleaning business, enabling it to obtain, maintain, and control the essential functions of its cleaning business.

146.

Coverall's janitors do not use business skill, judgment, or initiative with respect to the work they perform; nor do they exercise managerial skill in running their "business." Rather, Coverall controls the flow of work and assignments of cleaning jobs. It also employs numerous individuals to pursue and sign up the customers that the janitors service. With few exceptions, Coverall handles all aspects of marketing and advertising. Coverall maintains exclusive control over accounting and billing.

147.

Coverall's janitors are employed for substantial terms of time. Although unenforceable, the Janitorial Franchise Agreement that Coverall requires its janitors to sign states that the term of the relationship is 20 years.

148.

The cleaning services that Coverall's janitors provide are an integral part of Coverall's business. In fact, the cleaning services *are* Coverall's business.

149.

Coverall's cleaners are employees under the FLSA.

150.

Coverall violated the FLSA by failing to pay its janitor-employees minimum wages pursuant to 29 U.S.C. § 206.

151.

Coverall violated the FLSA by failing to pay its janitor-employees overtime pursuant to 29 U.S.C. § 207.

152.

Coverall violated the FLSA by failing to keep records pursuant to 29 U.S.C. § 211.

153.

As a result of Coverall's violations of the FLSA, Plaintiffs, on behalf of themselves and the FLSA Collective Action Class, request damages in the amount of (1) unpaid wages, (2) overtime, (3) liquidated damages pursuant to 29 U.S.C. § 216(b), and (4) reasonable attorneys' fees and costs.

154.

As a result of Coverall's violations of the FLSA, Plaintiffs, on behalf of themselves and the FLSA Collective Action Class, seek an order pursuant to 29 U.S.C. § 217 permanently enjoining and restraining future violations of the FLSA and requiring Coverall to make and keep such records as required by 29 U.S.C. § 211.

155.

Plaintiffs, on behalf of themselves and the FLSA Collective Action Class, seek a declaratory judgment that the class waiver contained in the Janitorial

Franchise Agreement is an unfair labor practice in violation of the National Labor Relations Act (29 U.S.C. §§ 157-158) because it limits the rights of Plaintiffs and other similarly situated janitors to engage in concerted activities and is therefore unenforceable.

## COUNT II: VIOLATION OF THE GEORGIA INDUSTRIAL LOAN ACT, O.C.G.A §§ 7-3-1 *ET SEQ.*

156.

Plaintiffs incorporate by reference and reallege Paragraphs 1 through 131 as if stated in full herein.

157.

The Georgia Industrial Loan Act requires that any person or entity obtain a license from the Georgia Industrial Loan Commissioner before making any loan of $3,000.00 or less, unless such person is exempted from the Act.

158.

The amounts of money Coverall advances to its janitors for the purchase of "Additional Business" and to pay other fees and amounts owed to Coverall are loans as defined by the Georgia Industrial Loan Act.

159.

Coverall is in the business of making loans to its janitors in amounts of $3,000.00 or less.

160.

Coverall is not exempt from the Georgia Industrial Loan Act.

161.

Coverall is not licensed under the Georgia Industrial Loan Act.

162.

Coverall made loans to Plaintiffs and other similarly situated persons and/or janitor companies in amounts of $3,000.00 or less.

163.

Even if licensed under the Georgia Industrial Loan Act, Coverall could not charge more than 10% per annum on loans of $3,000.00 or less.

164.

Coverall made loans to Plaintiffs and other similarly situated persons and/or janitor companies in amounts of $3,000.00 or less and charged more than 10% per annum.

165.

All loans made by Coverall to Plaintiffs and other similarly situated persons and/or janitor companies in amounts of $3,000.00 or less bear interest in excess of 10% per annum.

166.

In addition, all loan notes related to Coverall's loans to Plaintiffs and other similarly situated persons and/or janitor companies provide that, upon default, all amounts of principal and interest owed shall become immediately due and payable.

167.

All loans made by Coverall to Plaintiffs and other similarly situated persons and/or janitor companies for amounts of $3,000.00 or less are null and void.

168.

All loan contracts between Coverall and its janitors and/or their companies whom Coverall loaned $3,000.00 or less are null and void.

169.

The Janitorial Franchise Agreement between Coverall and its janitors and/or their companies whom Coverall loaned $3,000.00 or less is part of the loan contract and is therefore null and void.

170.

Plaintiffs, on behalf of themselves and other similarly situated persons and/or janitor companies, seek a declaration that their loan contracts with Coverall for amounts of $3,000.00 or less, including the Janitorial Franchise Agreement, are null and void.

171.

Plaintiffs, on behalf of themselves and other similarly situated persons and/or janitor companies, seek damages in the amount of any interest collected by Coverall on loans of $3,000.00 or less.

172.

Plaintiffs, on behalf of themselves and other similarly situated persons and/or janitor companies, seek a permanent injunction prohibiting Coverall from collecting any future interest on loans made for $3,000.00 or less.

173.

Plaintiffs, on behalf of themselves and other similarly situated persons and/or janitor companies, seek a permanent injunction prohibiting Coverall from making any future loans in violation of the Georgia Industrial Loan Act.

## COUNT III: VIOLATION OF GEORGIA'S PAYDAY LENDING ACT, O.C.G.A §§ 16-17-1 *ET SEQ.*

174.

Plaintiffs incorporate by reference and reallege Paragraphs 1 through 131 and 156 through 173 as if stated in full herein.

175.

O.C.G.A. §§ 16-17-1 *et seq.* (Georgia's "Payday Lending Act") applies to all transactions in which funds of $3,000.00 or less are advanced to be repaid at a later date.

176.

O.C.G.A. § 16-17-2 makes it unlawful for any business to loan $3,000.00 or less unless the business is exempt from the Payday Lending Act.

177.

Coverall is not exempt from the Payday Lending Act.

178.

Coverall made loans of $3,000.00 or less to Plaintiffs and other similarly situated persons and/or janitor companies.

179.

By making loans of $3,000.00 or less, Coverall violated the Payday Lending Act, O.C.G.A. §§ 16-17-1 *et seq.*

180.

Each loan Coverall made in violation of the Payday lending act is a separate violation of the Payday Lending Act.

181.

 As a result of violating the Payday Lending Act, Plaintiffs' and other similarly situated persons' and/or janitor company's loan contracts with Coverall are null and void.

182.

Coverall is barred from collecting any of the indebtedness created by the loan transactions that violate the Payday Lending Act and is liable to Plaintiffs and each member of the class for three times the amount of any interest or other charges collected in connection with the illegal loans.

183.

As a result of violating the Payday Lending Act, Plaintiffs and other similarly situated persons and/or janitor companies are entitled to recover their attorneys' fees and costs.

184.

Plaintiffs, on behalf of themselves and other similarly situated persons and/or janitor companies, seeks damages as allowed under the Payday Lending Act, including treble damages.

185.

Plaintiffs, on behalf of themselves and other similarly situated persons and/or janitor companies, seek a permanent injunction barring Coverall from

collecting any of the indebtedness created by the loans made in violation of the Payday Lending Act.

186.

Plaintiffs, on behalf of themselves and other similarly situated persons and/or janitor companies, seek a permanent injunction barring Coverall from making any future loans in violation of the Payday Lending Act.

## COUNT IV: VIOLATION OF GEORGIA RICO, O.C.G.A §§ 16-14-1 *ET SEQ.*

187.

Plaintiffs incorporate by reference and reallege Paragraphs 1 through 131 and 174 through 186 as if stated in full herein.

188.

Plaintiffs assert Count IV pursuant to Georgia's RICO statute seeking to stop and deter Coverall from engaging in its unlawful enterprise, which is conducted through a pattern of racketeering activity, and to provide for an adequate remedy for the victims of Coverall's scheme.

189.

Through a pattern of racketeering activity, Coverall acquired and maintained Plaintiffs' and other similarly situated persons' and/or companies' money.

190.

**Pattern of Racketeering Activity:**  Through multiples instances of fraud and deception and violations of Georgia's Payday Lending Act, Coverall has acquired and maintained substantial sums of money from Plaintiffs and other similarly situated janitors and/or janitor companies.

191.

**Racketeering Activity:**  Coverall has engaged in multiple instances of theft by deception by obtaining Plaintiffs' and other similarly situated persons and/or janitor companies' money by deceitful means and with the intention of depriving them of their money.  Coverall accomplishes its theft by promising performance of services that Coverall does not intend to perform and knows it will not be able to perform.  As defined in O.C.G.A. § 16-14-3(5)(A)(xii), theft by deception is "racketeering activity."  Coverall has committed multiple violations of Georgia's Payday Lending Act as stated in Paragraphs 174 through 186 above.  As defined in O.C.G.A. § 16-14-3(5)(A)(xxxvii), a violation of the Payday Lending Act is "racketeering activity."

192.

Coverall's pattern of racketeering activity shares a common victim: hardworking Georgia citizens looking to make an honest living by performing cleaning services—unassuming janitors.

193.

As a direct and proximate result of Coverall's scheme, Plaintiffs and other similarly situated persons and/or janitor companies suffered damages, including but not limited to payments of substantial "franchise" fees and payments on loans in violation of Georgia's Payday Lending Act.

194.

As a result of Coverall's scheme in violation of Georgia's RICO statute, Plaintiffs and other similarly situated persons and/or janitor companies are entitled to recover compensatory damages, punitive damages, treble damages, and attorneys' fees and costs.

## COUNT V: FRAUD AND MISREPRESENTATION

195.

Plaintiffs incorporate by reference and reallege Paragraphs 1 through 131 as if stated in full herein.

196.

In an effort to induce Plaintiffs and other similarly situated persons and/or janitor companies to enter into the Janitorial Franchise Agreement and pay the franchise fee, Coverall misrepresented that it would provide a certain amount of guaranteed business each month knowing that it did not have the requisite amount of business.

197.

Coverall made the misrepresentations to Plaintiffs and other similarly situated persons and/or janitor companies knowing that the representations were false or with reckless disregard for their truth.

198.

Coverall made the misrepresentations to Plaintiffs and other similarly situated persons and/or janitor companies with the intent to induce them into entering the Janitorial Franchise Agreement and paying the franchise fee.

199.

Plaintiffs and other similarly situated persons and/or janitor companies relied on Coverall's misrepresentations. Aside from Coverall's misrepresentations, there would have been no other reason for Plaintiffs and other similarly situated persons and/or janitor companies to enter into the Janitorial Franchise Agreement and pay the "franchise" fee.

200.

But for Coverall's misrepresentations, Plaintiffs and other similarly situated persons and/or janitor companies would not have paid the "franchise" fee and signed the Janitorial Franchise Agreement.

201.

As a result of Plaintiffs' and other similarly situated persons' and/or janitor companies' reliance on Coverall's knowing and intentional misrepresentations, Plaintiffs and other similarly situated persons and/or janitor companies suffered damages, including but not limited to the amount of the "franchise" fees paid by Plaintiffs and the other similarly situated persons and/or janitor companies.

202.

As a result of Coverall's fraud and misrepresentations, Plaintiffs and the other similarly situated persons and/or janitor companies are entitled to compensatory damages, punitive damages, and attorneys' fees.

**COUNT VI: DECLARATORY JUDGMENT**

203.

Plaintiffs incorporate by reference and reallege Paragraphs 1 through 131 as if stated in full herein.

204.

Plaintiffs, on behalf of themselves and other similarly situated janitors and/or janitor companies, bring their claims for declaratory relief pursuant to 28 U.S.C. § 2201.

205.

Plaintiffs seek a declaration that Coverall's Janitorial Franchise Agreement is null and void, unconscionable, and/or unenforceable.

206.

Plaintiffs seek a declaration that the Janitorial Franchise Agreement's delegation provision in the arbitration clause is inapplicable, void, and/or unenforceable in this case.

207.

Plaintiffs seek a declaration that the Janitorial Franchise Agreement's class waiver is inapplicable, void, and/or unenforceable in this case.

208.

Plaintiffs seek a declaration that the arbitration agreement is inapplicable, void, and/or unenforceable.

209.

The Court should declare the Janitorial Franchise Agreement, arbitration agreement, delegation provision, and class waiver are inapplicable, void, and/or, unenforceable for the reasons stated herein.

210.

There is a bona fide, actual, present, practical need for the declaration, as there is a present, ascertained or ascertainable state of facts in regard to some power, privilege or right of Plaintiffs dependent upon the facts and/or law applicable to the facts.

211.

Coverall has an actual present, antagonistic, and adverse interest in the subject matter, and all such interests are before the Court or will be before the Court upon proper process.

212.

The relief sought is not merely the giving of legal advice by the Court or the answer to questions propounded by curiosity.

## COUNT VII: ATTORNEYS' FEES PURSUANT TO O.C.G.A § 13-6-11

213.

Plaintiffs incorporate by reference and reallege Paragraphs 1 through 131 as if stated in full herein.

214.

At all times relative to the claims stated herein, Coverall acted in bad faith, was stubbornly litigious, and caused Plaintiffs and other members of the class unnecessary trouble and expense.

215.

As a result, Plaintiffs are entitled to their attorneys' fees and costs in pursuing this action.

<strong><u>DEMAND FOR TRIAL BY JURY</u></strong>

Plaintiffs demand a trial by jury.

<strong><u>PRAYERS FOR RELIEF</u></strong>

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

A. Declare that the Janitorial Franchise Agreement, arbitration agreement, delegation provision, and class waiver are inapplicable, null and void, and/or unenforceable;

B. Issue and order that notice of this action be sent to the Collective Action Class pursuant to 29 U.S.C. § 216(b);

C. Issue an order that this action is properly maintainable as a class action with respect to Plaintiffs' state law claims and certifying this action as a class action under Federal Rule of Civil Procedure 23;

D. Appoint the undersigned law firm, Bloom Sugarman, LLP as class counsel in this matter;

E. Issue an order approving Plaintiffs as class representatives along with all other persons who the Court may permit to join as representatives;

F. Issue an order requiring reasonable notice to be given to the Rule 23 subclasses following certification;

G. Permanently enjoin Coverall from violating the FLSA and issue an order requiring that Coverall comply with the FLSA's wage, overtime, and reporting requirements;

H. Permanently enjoin Coverall from collecting future unlawful interest under the Georgia Industrial Loan Act, O.C.G.A. §§ 7-3-1 *et seq.*;

I. Permanently enjoin Coverall from collecting any future amounts on loans made in violation of Georgia's Payday Lending Act, O.C.G.A. §§ 16-17-1 *et seq.*;

J. Award Plaintiffs and the members of the respective subclasses all damages related to their claims for injunctive relief;

K. Award Plaintiffs and the members of the respective subclasses all compensatory damages in an amount to be determined by a jury trial, together with interest thereon;

L. Award Plaintiffs and the members of the respective subclasses punitive damages sufficient to punish and deter Coverall from its unlawful conduct;

M. Issue an order trebling all damages awarded pursuant to both Georgia's Payday Lending Act, O.C.G.A. §§ 16-17-1 *et seq.*, and Georgia's RICO statute, O.C.G.A. §§ 16-14-1 *et seq.*;

N. Permanently enjoin Coverall from making any future loans of $3,000.00 or less in violation of the Georgia Industrial Loan Act, O.C.GA. §§ 7-3-1 *et seq.*, and Georgia's Payday Lending Act, O.C.G.A. §§ 16-17-1 *et seq.*;

O. Award Plaintiffs their reasonable attorneys' fees and costs in connection with this action; and

P. Order such other relief as the Court may deem just and proper.

Respectfully submitted this 27th day of June, 2017.

/s/ J. Nicholas Phillips
F. Skip Sugarman
Georgia Bar No. 690773
J. Nicholas Phillips
Georgia Bar No. 986208

BLOOM SUGARMAN, LLP
977 Ponce de Leon Avenue, NE
Atlanta, Georgia  30306-4265
Telephone:  404-577-7710
Facsimile:  404-577-7715

*Attorneys for Plaintiffs Randall Richardson
and Janitorial Tech, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 5.IB</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing pleading has been prepared using one of the font and point selections approved by the Court in Local Rule 5.1B. This document was prepared using Times New Roman, 14 point font.

This 27th day of June, 2017.

Respectfully submitted,

/s/ J. Nicholas Phillips
F. Skip Sugarman
Georgia Bar No. 690773
J. Nicholas Phillips
Georgia Bar No. 986208

BLOOM SUGARMAN, LLP
977 Ponce de Leon Avenue, NE
Atlanta, Georgia 30306-4265
Telephone: 404-577-7710
Facsimile: 404-577-7715

*Attorneys for Plaintiffs Randall Richardson*
*and Janitorial Tech, LLC*