IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RANDALL RICHARDSON, et al.,

    Plaintiffs,

       v.

COVERALL NORTH AMERICA,
INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:17-CV-2405-TWT

## OPINION AND ORDER

This is an FLSA action. It is before the Court on the Defendant's Motion to Dismiss, or in the Alternative, Stay Litigation Pending Arbitration [Doc. 7]. For the reasons set forth below, the Defendant's Motion to Dismiss, or in the Alternative, Stay Litigation Pending Arbitration [Doc. 7] is GRANTED in part and DENIED in part.

## I. Background

This case arises out of a franchise agreement between the Plaintiffs Randall Richardson and Janitorial Tech, LLC, and the Defendant Coverall North America, Inc. The Defendant operates a commercial cleaning franchising business.[1] Mr. Richardson

---

[1]    Compl. ¶ 13.

is the owner of Janitorial Tech, a limited liability company.[2] On May 17, 2016, the

parties signed the Joint Franchise Agreement (the "Franchise Agreement"), in which

Janitorial Tech would become a franchisee of the Defendant.[3] Mr. Richardson would

perform cleaning services for the Defendant's customers, and the Defendant would

pay Janitorial Tech.[4] Mr. Richardson would then retain the money for the services he

provided.[5] The Plaintiffs paid Coverall a $15,570 franchise fee, and the Defendant

promised to provide $3,000 in guaranteed monthly business.[6] To pay this fee, the

Plaintiffs paid $3,500 as a down payment, and received a loan from the Defendant for

the remainder.[7] Mr. Richardson personally guaranteed the loan.[8] The Plaintiffs allege

that the Defendant ultimately failed to provide the guaranteed business.[9] Throughout

this process, the Defendant would only formally engage with Janitorial Tech.[10]

---

[2]     *Id.* ¶ 57.

[3]     *Id.* ¶ 55.

[4]     *Id.*

[5]     *Id.* ¶ 57.

[6]     *Id.* ¶ 58.

[7]     *Id.* ¶ 59.

[8]     *Id.* ¶ 60.

[9]     *Id.* ¶ 64.

[10]    *Id.* ¶ 56.

The Plaintiffs allege that the Defendant's franchise arrangement is a "scheme" to avoid FLSA liability by requiring its janitors to create limited liability companies and enter into franchise agreements.[11] The Plaintiffs allege that the Defendant misclassifies its janitors as franchisees and independent contractors, not employees, in order to avoid these FLSA obligations.[12] The Plaintiffs also allege that the Defendant did not  provide the amount of business to the Plaintiffs that it had promised to provide, and that the Defendant provided illegal loans to the Plaintiffs.[13] On June 27, 2017, the Plaintiffs filed this suit, seeking to represent themselves and a class of all other similarly situated persons and companies.[14] The Plaintiffs assert claims for violation of the FLSA, violation of the Georgia Industrial Loan Act, violation of Georgia's Payday Lending Act, violation of the Georgia RICO statute, and fraud and misrepresentation. The Defendant now moves to dismiss, or in the alternative, stay this litigation pending arbitration.

## II. Legal Standard

### A. Motion to Dismiss Standard

---

[11]     *Id.* ¶ 27.

[12]     *Id.* ¶ 4.

[13]     *Id.* ¶¶ 5, 64.

[14]     *Id.* ¶ 2.

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[15] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[16] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[17] Generally, notice pleading is all that is required for a valid complaint.[18] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.

### B. Motion to Compel Arbitration Standard

---

[15]   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[16]   *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

[17]   *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[18]   *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

"The liberal federal policy favoring arbitration agreements . . . is at bottom a policy guaranteeing the enforcement of private contractual arrangements."[19] When considering a motion to compel arbitration, the Court must first "determine whether the parties agreed to arbitrate that dispute."[20] If they have, the Court must then determine whether the arbitration clause is valid. It may be unenforceable on grounds that would permit the revocation of any contract, such as fraud or unconscionability.[21] There may also be legal constraints precluding arbitration, such as a clear congressional intention that a certain claim be heard in a judicial forum.[22] "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to

---

[19]     *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985).

[20]     *Id.* at 626.

[21]     *See id.* at 627 ("[C]ourts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'") (citing 9 U.S.C. § 2)).

[22]      *See id.* at 628 ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.").

arbitrability."[23] If the moving party establishes the necessary elements, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration."

### III. Discussion

### A. Mediation

First, the Defendant argues that the Plaintiffs' claims should be dismissed because mediation was a condition precedent to the filing of a lawsuit.[24] The Defendant contends that the parties agreed to make a good faith attempt to mediate before filing a lawsuit, and that the Plaintiffs did not satisfy this condition precedent because they never requested mediation. The Franchise Agreement, under a heading titled "INFORMAL DISPUTE RESOLUTION/MEDIATION, provides:

> If a dispute arises between Coverall and Franchisee and if the dispute is not resolved or settled, Coverall and Franchisee agree that prior to filing any proceeding, whether in arbitration or (if permissible) in court, they will attempt, in good faith, to settle the dispute by non-binding mediation administered pursuant to the Commercial Mediation Rules of the American Arbitration Association, or as otherwise agreed upon in writing by the parties. The mediation shall take place in the Area in which Franchisee conducts its business, and shall be administered by a neutral mediator agreed upon by the parties. In the event Coverall and Franchisee are unable to agree upon a mediator within 15 days of the date on which either party requests mediation of a matter, the mediator shall be designated by the American Arbitration Association. The costs

---

[23]     *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

[24]     Def.'s Mot. to Dismiss, at 6.

of the mediation shall be shared equally by the parties unless otherwise agreed in writing.[25]

Thus, under the Franchise Agreement, mediation is a condition precedent to either party's ability to file a lawsuit or commence arbitration.[26]

The parties do not dispute that this provision is valid and enforceable under Georgia law. Instead, they dispute whether the Plaintiffs requested mediation.[27] Based upon the evidence offered by the parties, the Court finds that the Plaintiffs did not make a good faith request for mediation, and consequently have not satisfied the condition precedent to filing a lawsuit. The Plaintiffs provide evidence of e-mails Mr. Richardson sent to the Defendant asking for mediation.[28] However, evidence provided by the Defendant fills in gaps in the e-mail chains that the Plaintiffs provided. When these e-mails are put into context by the Defendant's evidence, it becomes obvious that Mr. Richardson was not requesting mediation for the issues in dispute in this lawsuit.

---

[25]     Def.'s Mot. to Dismiss, Ex. 1-A at 15.

[26]     *Houseboat Store, LLC v. Chris-Craft Corp.*, 302 Ga. App. 795, 799 (2010) ("[T]he mediation provision is a condition precedent to either party's right to file a lawsuit arising out of disputes between them.").

[27]     Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 8-9; Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 3-4.

[28]     Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, Ex. A.

This evidence shows that Mr. Richardson communicated with the Defendant concerning the Defendant's failure to provide the guaranteed business it had promised to provide, and about refinancing the debt on the loans that the Plaintiffs owed the Defendant.[29] The parties attempted to informally resolve these two specific issues: Mr. Richardson's concerns about the guaranteed business, and money owed on the notes. This is further supported by the settlement agreement the Defendant proposed to Mr. Richardson, which addressed refinancing the promissory notes and providing money for business owed.[30] Mr. Richardson's requests for mediation did not address the issues in dispute in this lawsuit. These e-mail communications did not touch upon any FLSA allegations, fraud allegations, or allegations that the loans violated state law. And, although the lack of promised business is mentioned in the Complaint, it is only a peripheral issue in the instant lawsuit. Therefore, the Court finds that the Plaintiffs did not make a good faith attempt to mediate the disputes at issue in this lawsuit.

However, the Court concludes that a stay is more appropriate than dismissal.[31] "When confronted with an objection that a plaintiff has initiated litigation without

---

[29]   Reply Br. in Supp. of Def.'s Mot. to Dismiss, Ex. A.

[30]   Pls.' Sur-Reply Br. in Opp'n to Def.'s Mot. to Dismiss, Ex. A-1 at 1-2.

[31]   *See Mobility Transit Servs., LLC v. Augusta*, 2013 WL 3225475, at *3 (S.D. Ga. June 25, 2013) (concluding that a stay was more appropriate than dismissal in a case involving failure to mediate).

satisfying arbitration or mediation requirements, courts routinely stay rather than dismiss the proceedings to allow for implementation of the agreed-upon dispute resolution mechanism."[32] "[D]istrict courts have inherent, discretionary authority to issue stays in many circumstances, and granting a stay to permit mediation (or to require it) will often be appropriate."[33] "It is true, of course, that examples in the case law do exist wherein actions have been dismissed for non-compliance with dispute resolution provisions. But that course of action is not mandatory; rather, district courts are vested with discretion to determine whether stay or dismissal is appropriate."[34] Therefore, the Court stays this litigation until the Plaintiffs make a proper request for mediation.

The Plaintiffs also argue that the Defendant waived its right to rely upon the alternative dispute resolution mechanisms in the Franchise Agreement by refusing to mediate.[35] However, as discussed above, the e-mail communications between the

---

[32]    *Id.* (quoting *Swartz v. Westminister Servs., Inc.*, 2010 WL 3522141, at *1 (M.D. Fla. Sept. 8, 2010)).

[33]    *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008); *see also Clinton v. Jones*, 520 U.S. 681, 683 (1997) (noting that a "District Court has broad discretion to stay proceedings as an incident to its power to control its own docket").

[34]    *Mobility Transit Servs.*, 2013 WL 3225475 at *3 (quoting *N-Tron Corp. v. Rockwell Automation, Inc.*, 2010 WL 653760, at *7 (S.D. Ala. Feb. 18, 2010)).

[35]    Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 9-11.

parties demonstrate that the Plaintiffs never raised complaints concerning the issues in dispute in this lawsuit. Therefore, the Defendant never refused to mediate these issues at all. Furthermore, the issue of waiver should be decided by the arbitrator, and not this Court.[36]

### B. Arbitration

The Court also concludes that it is appropriate to grant the Defendant's motion to compel arbitration. Any disputes that remain unresolved after the completion of mediation should be submitted to arbitration pursuant to the procedures outlined in the Franchise Agreement. Paragraph 25 of the Franchise Agreement, titled "DISPUTE RESOLUTION/ARBITRATION," provides, in part, that "all controversies, disputes or claims between Coverall . . . and Franchisee . . . arising out of or related to this Agreement or the validity of this Agreement or any provision thereof . . . shall be submitted promptly for binding arbitration."[37]

Importantly, the Franchise Agreement also contains a provision delegating questions of validity or enforceability of the arbitration agreement to the arbitrator. This provision states that all disputes "arising out of or related to this Agreement or

---

[36]     *BG Group, PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1207 (2014) (noting that "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration" including "waiver, delay, or a like defense to arbitrability").

[37]     Def.'s Mot. to Dismiss, Ex. 1-A at 15.

the validity of this Agreement or any provision thereof (including this arbitration agreement, the validity and scope of which Coverall and Franchisee acknowledge and agree is to be determined by an arbitrator, not a court)" should be submitted to arbitration.[38] A "delegation provision" such as this is an "an agreement to arbitrate threshold issues concerning the arbitration agreement."[39] With such a provision, the parties have agreed that threshold determinations, such as whether an arbitration agreement is enforceable, should be determined by the arbitrator.[40] Both the Supreme Court and the Eleventh Circuit have upheld these kinds of provisions.[41] "Courts should enforce valid delegation provisions as long as there is 'clear and unmistakable' evidence that the parties manifested their intent to arbitrate a gateway question."[42]

The Court's authority to review an arbitration agreement containing a delegation provision is narrow. "When an arbitration agreement contains a delegation

---

[38]     Def.'s Mot. to Dismiss, Ex. 1-A at 15.

[39]     *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

[40]     *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015).

[41]     *See Rent-A-Center*, 561 U.S. at 68-69 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."); *Parnell*, 804 F.3d at 1146 (discussing the enforceability of delegation provisions).

[42]     *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012).

provision and the plaintiff raises a challenge to the contract as a whole, the federal courts may not review his claim because it has been committed to the power of the arbitrator. Instead, the plaintiff must 'challenge[ ] the delegation provision specifically.'"[43] "[A]bsent a challenge to the delegation provision itself, the federal courts must treat the delegation provision 'as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.'"[44] None of the Plaintiffs' arguments specifically challenge the delegation provision. Therefore, these disputes should be decided by an arbitrator.

---

[43]     *Parnell*, 804 F.3d at 1146 (quoting *Rent-A-Center*, 561 U.S. at 72).

[44]     *Id.* at 1146-47 (quoting *Rent-A-Center*, 561 U.S. at 72).

### i. Class Action Waiver

First, the Plaintiffs challenge the class action waiver in the arbitration clause.

This waiver provides:

> B. Franchisee and Coverall agree that arbitration shall be conducted on an individual, not a class wide basis, that only Coverall (and its officers, directors, agents and/or employees) and Franchisee (and Franchisee's owners, officers, directors and/or guarantors) may be parties to any arbitration proceeding described in this Paragraph 25B, and that no such arbitration between Coverall and Franchisee shall be consolidated with any other proceeding between Coverall and any other Franchisee or third party.[45]

The Plaintiffs argue that this creates a carve-out from the delegation provision for challenges to the class action waiver.[46] However, the Plaintiffs' argument misconstrues this contractual language. The class action waiver provides that "if any court or arbitrator determines that all or any part" of the class action waiver is unenforceable, then those disputes shall be resolved in a judicial proceeding.[47] From this, the Plaintiffs argue that the Franchise Agreement states that a court can determine if the class action waiver is enforceable.

However, this language merely states that *if* a court, under some circumstance, were to conclude that the waiver is unenforceable, then those disputes would be heard

---

[45]    Def.'s Mot. to Dismiss, Ex. 1-A at 15.

[46]    Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 17.

[47]    Def.'s Mot. to Dismiss, Ex. 1-A at 15.

by a court of competent jurisdiction. It addresses a hypothetical situation in which a court has the authority to make such a determination. It does not itself give authority to review the waiver. One example of such a situation, as the Defendant noted at oral argument, would be if a court were to find the delegation provision invalid. This provision does not itself, however, provide this Court with authority to determine whether the class action waiver is enforceable. Therefore, there is no carve-out provision for review of the class action waiver.

The Plaintiffs also argue that the class action waiver is unenforceable because it violates the National Labor Relations Act, the Georgia Industrial Loan Act, and Georgia's Payday Lending Act.[48] However, these arguments challenge the enforceability of a portion of the arbitration agreement, which the parties have committed to be determined in arbitration. This is the exact kind of dispute that the delegation provision addresses. Since these arguments do not challenge the validity of the delegation provision itself, the arbitrator, and not this Court, should review them.

### ii. Injunctive Relief

Next, the Plaintiffs argue that their claims for injunctive relief are not subject to arbitration. The Franchise Agreement provides that "[n]otwithstanding anything in

---

[48]     Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 17-23.

Paragraphs 24 and 25 to the contrary, Coverall and Franchisee shall be entitled to apply at any time directly to a court of competent jurisdiction for the entry of preliminary and permanent injunctions and orders of specific performance."[49] The Plaintiffs argue that the arbitration agreement provides a carve-out from the delegation provision for claims for injunctive relief and specific performance.[50]

However, the Court concludes that this is a threshold determination that the parties have delegated to the arbitrator to determine. The delegation provision states that any disputes arising out of the arbitration agreement, including its "scope" should be "determined by an arbitrator, not a court."[51] This dispute goes to the scope of the arbitration agreement – whether it encompasses injunctive relief or not. It would contravene the parties' intent for the Court to decide this issue. Therefore, the arbitrator should determine whether the arbitration agreement encompasses the Plaintiffs' claims for injunctive relief. This conclusion is further bolstered by the fact that holding otherwise would result in inefficient piecemeal litigation in which certain claims would be decided in arbitration while others would remain before this Court.

---

[49]     Def.'s Mot. to Dismiss, Ex. 1-A at 16.

[50]     Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 13-16.

[51]     Def.'s Mot. to Dismiss, Ex. 1-A at 15.

### iii. Notice of Right to Pursue Administrative Claims

Next, the Plaintiffs argue that the delegation and arbitration provisions are unenforceable because they do not provide reasonable notice to the Plaintiffs that they can file administrative claims before the NLRB.[52] Courts have found that language in arbitration provisions, which employees can reasonably interpret as a waiver of their right to file administrative labor charges, violate the NLRA.[53]

However, this is once again a challenge to the validity or enforceability of the arbitration agreement, which is an issue that the parties have delegated to the arbitrator. The Plaintiffs essentially are arguing that the arbitration agreement is unenforceable because it violates the NLRA. The parties have specifically delegated questions of enforceability of the arbitration provision such as this to the arbitrator. The Plaintiffs attempt to characterize this as a challenge to the delegation provision, which this Court can consider. However, the Plaintiffs have failed to explain how delegating the threshold questions of arbitrability to an arbitrator would lead employees to believe that they could not file administrative actions with the NLRB. All of the cases cited by the Plaintiffs deal sweeping language in arbitration agreements that seem to preclude any type of civil proceeding outside of arbitration,

---

[52]     Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 23.

[53]     *See, e.g.*, *Murphy Oil USA v. NLRB*, 808 F.3d 1013, 1019 (5th Cir. 2015); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 363-64 (5th Cir. 2013).

and not language in delegation provisions.[54] Therefore, since this argument does not present a challenge to the validity of the delegation provision, it should be left to the arbitrator.

### iv. Mr. Richardson's Claims

Finally, the Plaintiffs argue that Mr. Richardson's claims are not subject to arbitration. Specifically, they contend that Mr. Richardson was not a party to the arbitration agreement between the Defendant and Janitorial Tech because he only signed the contract in a representative capacity on behalf of Janitorial Tech.[55] Thus, according to them, Mr. Richardson did not individually agree to arbitrate his claims. The Defendant responds that Mr. Richardson signed the Franchise Agreement as sole owner of Janitorial Tech, and agreed that the arbitration agreement applied to Janitorial Tech and its "owners, officers, directors, agents and/or employees and/or any guarantors of this Agreement."[56]

---

[54]     *See, e.g.*, *D.R. Horton*, 737 F.3d at 363 (discussing an arbitration clause stating that employees waived the right to file a "lawsuit or other civil proceeding").

[55]     Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 24-25.

[56]     Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 8.

"Arbitration is . . . a matter of contract, and 'the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate.'"[57] Ordinarily, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[58] "Under certain circumstances, however, nonsignatories to an arbitration agreement governed by the Federal Arbitration Act can be compelled to arbitrate their claims."[59] "In deciding whether a nonsignatory should be bound to an arbitration agreement . . . '[the Georgia Court of Appeals] has considered a number of other factors in this context, including the status of the parties as joint tortfeasors, the relationship of the claims to the arbitration contract, and the existence of an agency relationship.'"[60] For example, the Georgia Court of Appeals has held that a non-signatory guarantor who asserted a claim for affirmative relief was estopped from avoiding arbitration.[61] The Georgia Court of Appeals has also compelled a non-

---

[57]    *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017) (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)).

[58]    *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

[59]    *LaSonde v. CitiFinancial Mortg. Co.*, 273 Ga. App. 113, 114 (2005).

[60]    *Lankford v. Orkin Exterminating Co.*, 266 Ga. App. 228, 231 (2004).

[61]    *Dunaway v. UAP/GA AG. Chem., Inc.*, 301 Ga. App. 282, 286 (2009) ("[B]y asserting a claim for affirmative relief, the Dunaway entities were estopped from avoiding arbitration of the set-off claim.").

signatory plaintiff to arbitrate when that plaintiff's claims arose from the contract containing the arbitration agreement and were intertwined with the claims of the signatory plaintiff.[62]

Here, Mr. Richardson and Janitorial Tech's claims are inextricably intertwined. In fact, they maintain the same exact claims against the Defendant, which weighs in favor of compelling Mr. Richardson to arbitration.[63] Like the non-signatory party in *Dunaway*, Mr. Richardson chose to assert an affirmative claim for relief that arose out of the business relationship resulting that the Franchise Agreement created. Furthermore, Paragraph 37 of the Franchise Agreement, titled "GUARANTY," states that "[t]he shareholders or members of any corporate entity constituting Franchisee . . . that may own the shares of the partnership or corporate entity constituting Franchisee . . . do by signing this Agreement . . . agree to be bound by Paragraphs 18,

---

[62]     *LaSonde*, 273 Ga. App. at 114; *see also Lankford*, 266 Ga. App. at 231 (concluding that intertwined claims were appropriately sent to arbitration despite the fact that one defendant was a non-signatory to the arbitration agreement); *Autonation Fin. Servs. Corp. v. Arain*, 264 Ga. App. 755, 761 (2003) (noting that the plaintiff's claims against signatory and non-signatory defendants were "based on the same facts and are inherently inseparable").

[63]     *See LaSonde*, 273 Ga. App. at 115 ("Moreover, because Jack and Mary have alleged the exact claims against CitiFinancial, resolution of their claims in different forums 'may result in varying decisions, discreditable to the administration of justice.'").

20, 23, 24, and 25."[64] Paragraph 25 contains the arbitration provisions. Thus, Mr. Richardson agreed that he, as the sole member of Janitorial Tech, would be bound by the arbitration provision. Finally, Mr. Richardson also personally guaranteed Janitorial Tech's performance of its obligations under the Franchise Agreement.[65] Mr. Richardson's status as a guarantor further weighs in favor of compelling him to comply with the arbitration provision.[66] Because of these facts, the Court finds that it is appropriate to compel Mr. Richardson to arbitrate his claims.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion to Dismiss, or in the Alternative, Stay Litigation Pending Arbitration [Doc. 7] is GRANTED in part and DENIED in part. The Clerk is directed to administratively close this case.

SO ORDERED, this 7 day of December, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[64]    Def.'s Mot. to Dismiss, Ex. 1-A at 17.

[65]    Reply Br. in Supp. of Def.'s Mot. to Dismiss, Ex. A-3.

[66]    *See Dunaway*, 301 Ga. App. at 285-86 (noting that the non-signatory party "personally guaranteed" the signatory party's debt and concluding that the non-signatory party was bound by the arbitration provision because its claim arose out of this business relationship).